[Civ. No. 9001. Third Dist. July 31, 1957.]

BEN GONELLA, Plaintiff and Appellant, v. CITY OF MERCED, Respondent; ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Defendant and Appellant.

C. Ray Robinson, W. E. Craven and Donald E. Oren for Plaintiff and Appellant.

Robert W. Walker, Frederic A. Jacobus, J. H. Cummins and Henry M. Moffat for Defendant and Appellant.

Cardozo, Trimbur & Nickerson and Landram & Silveira for Respondent.

VAN DYKE, P. J. — Respondent Gonella, as plaintiff, brought this action to recover damages from the Atchison, Topeka and Santa Fe Railway Company, hereinafter called Santa Fe, and the city of Merced, hereinafter called the city. His complaint charged the city with negligence in the construction and maintenance of certain of its streets, whereby surface waters were discharged over his land. Against Santa Fe he complained that the embankments upon which their tracks were situated where they crossed a public street in the city diverted the normal and natural flow of surface waters to and upon his land. The trial court found that on or about January 15, 1952, surface and storm waters could

not be properly drained from certain public streets in the city, and that said waters were thus caused to accumulate on said streets, and when so accumulated to run in a southwesterly direction down N Street in said city to be discharged upon Gonella's property, so that the same were submerged and his tomato plants growing thereon in hotbeds were destroyed.

Responsive to an allegation in the complaint that the city had notice of a dangerous and defective condition of said streets and failed and neglected to remedy the same, the court found the same to be untrue. It was found that the Santa Fe was possessed and in control of a right of way for railroad purposes along 24th Street parallel to 23d and 25th Streets in said city and lying between the two, and that Santa Fe maintained a main line of railroad tracks and a spur line of railroad tracks upon the right of way at a point where 24th intersects and crosses N Street in said city; that Santa Fe's tracks were maintained on embankments at a level several feet higher than the surface of N Street and of the adjacent land, including the land of Gonella, and were so maintained and constructed as to obstruct and divert the normal and natural flow of surface and storm waters along N Street in a southwesterly direction and to prevent such waters from flowing past the embankments; that at all times material the natural and normal flow and drainage of surface and storm waters was in a southwesterly direction on and near N Street at that place; that as a direct proximate result of the way in which Santa Fe maintained its tracks on the said embankments, the same obstructed and diverted the said natural and normal flow and drainage of surface and storm waters along said N Street, and caused the same to accumulate and collect at the point of said embankments on N Street and, as a result, Gonella's land was submerged. It was found that Santa Fe's tracks were negligently constructed and maintained at such a level as to obstruct and divert the natural and normal flow of surface and storm waters along N Street and to prevent such waters from flowing past the railroad embankments and on down N Street toward 23d as they would naturally and normally flow save for said obstructions; that although there was a drain pipe under the main line of Santa Fe's tracks which drain pipe was maintained for the purpose of permitting surface and storm waters to flow southerly along N Street and beyond the tracks, yet Santa Fe negligently permitted the drain pipe under its main line tracks to become

clogged so as to prevent the said southerly flow of surface
and storm waters along N toward 23d Street and to divert the
same by causing them to collect and accumulate against the
railroad embankments. The court found that Gonella suf-
fered damage in the sum of $9,678.02 and gave judgment
against Santa Fe for that amount, from which judgment Santa
Fe appeals. During the trial the court granted a nonsuit as to
the city and from the ensuing judgment Gonella appeals.

The following facts were established without conflict. The
general slope of land in the area north and east of the inter-
section of N and 24th Streets in the city is from the northeast
to the southwest. The land is generally level, and the slope
slight, so that in the state of nature prior to the development
of the city surface and storm waters falling upon the land
found their way south and southwesterly following the general
slope of the land in that direction. In 1896 the city granted
to the predecessor of Santa Fe the right to build and operate
a steam railway along 24th Street, the ordinance providing
that the center line of track was to be on the center line of
24th Street. The railroad was so built, and two years later
Santa Fe took over the predecessor railway company that
built the road and since that time has maintained the tracks
and the embankment upon which they lie. From 1898 to
January of 1952 no changes have been made in either the
track or embankment. In 1905 the city granted to Yosemite
Valley Railroad Company, hereafter called Yosemite, the right
to construct and operate a single track railroad along 24th
Street, the center line of the road to be parallel with and 28
feet northerly from the center line of said street. The road
was built on an embankment similar to that upon which was
constructed the main line of the Santa Fe, and although
Yosemite long ago abandoned its tracks and took up the rails,
the embankment remained in the street and was there when
Gonella suffered damage through the submerging of his land.
Although Yosemite had surrendered its franchise, the city
had never removed the embankment. In 1921 Santa Fe, under
franchise, built a spur track which took off the main track
between M Street and N Street, curved southerly, and then
proceeded westerly across N Street south of and generally
parallel to the main line embankment. It, too, was constructed
on an embankment approximately the same height as the other
two. For a long time preceding the damage to Gonella's
property, there existed a drain pipe beneath both the Yo-
semite embankment and the Santa Fe main line embankment

located along the eastern edge of N Street, but it had never been extended through the spur embankment. This drain pipe had become clogged and had been so for a long time. On January 15, 1952, during a heavy rainstorm, surface waters flooded Gonella's tomato plants. For many years prior thereto, no surface waters had collected upon Gonella's land notwithstanding the embankments, because the city had maintained 25th Street at such an elevation as to divert surface water away from that area. However, just prior to the flooding of Gonella's land, the city cut a storm drain under the intersection of N and 25th Streets. Twenty-fifth Street runs generally east and west and intersects N Street which runs generally north and south. For more than 30 years, because of this elevation of 25th Street the water had often ponded at the intersection of N and 25th Streets. Complaint was made to the city by property owners at the northwest corner of the intersection of 25th and N Streets concerning this condition. The city cut the storm drain along the easterly line of N Street and underneath 25th Street so that the water collecting and coming down against 25th Street at that point would be released down N Street.. The city probed the drain under the embankments at the intersection of 24th and N and found the old drain under the two northerly embankments to be clogged. It ascertained also that there was no drain under the spur embankment and, of course, had knowledge that under physical laws if the water was released down N and to the embankments it could not proceed further, but would pond there. The storm drain at 25th and N was completely installed by January 8, 1952. Gonella complained to the city that if the drain was used to discharge water against the embankments his land would be flooded. After Gonella's complaint the city sandbagged the storm drain to prevent water flowing through it until the embankment condition could be remedied. On January 15th, when the heavy rain fell, the surface water broke through the bagging and flowed through the storm drain, down N Street, against the railroad embankments and over onto Gonella's land. Thereafter, through joint action, Santa Fe and the city opened the old drain under the two embankments, and extended it under the spur. It appears, without dispute, that the immediate cause of the flooding of Gonella's land was the action of the city in cutting the storm drain under the intersection of 25th and N Streets, and in releasing water that had ponded against the elevated surface of the intersection.

Although the court found that the city had no notice of any defective or dangerous condition of its streets, this finding cannot stand in view of the related facts.

■ "Where the evidence discloses that a municipality has created the condition for which plaintiff seeks to hold it liable, it is not necessary to introduce further evidence to show knowledge on the part of the municipality of the defective condition created by it which has resulted in injury." (*Aguirre* v. *City of Los Angeles*, 46 Cal.2d 841, 843 [299 P.2d 862].)

■ We will first consider the appeal of Gonella from the judgment based upon the granting of a nonsuit to the city. In view of the fact that the trial court's finding that the city had no notice or knowledge of any defective condition of its streets is without support in the evidence, as we have heretofore stated, the granting of the nonsuit was error. The city, having permitted the water to pond against the elevated surface of 25th Street, and having cut the storm drain so that the ponded water could escape and flow against the embankments, and having then sandbagged the drain so ineffectively as to allow the water to escape, could not thereafter claim as a matter of law that these conditions did not create a dangerous and defective condition of its property resulting in the flooding of Gonella's land. Whether or not the condition it created constituted a dangerous condition of its property and whether or not it was negligent in the measures it took to prevent damage and whether or not the escape of the water was proximately caused by that negligence were all questions for the trier of fact to determine. It was error, therefore, to grant the nonsuit. ■ In further support of the nonsuit, however, the city charges that the record disclosed the lack of an indispensable party. Santa Fe, too, seeks to lean upon this crutch, saying that there was a lack of an indispensable party and, although it did not at the trial urge the point, nevertheless it now says if there was such lack then the jurisdiction of the court to proceed against either defendant was lost until the indispensable party was brought in. Such would be the effect of the lack of an indispensable party. However, it is our view that the major premise is unsound. The claim of lack of an indispensable party is based upon the following situation presented by the record: Gonella intended to transplant the tomato plants to land which he had leased from one Huffman. That lease provided that the rental for the land should be one-fourth of

the gross sale price of all crops produced. In *Goodwin* v. *Braden,* 134 Cal.App.2d 34, 42 [285 P.2d 330], where the lessee was paying 25 per cent of the gross crop as rent of the land, the court held that the lessee had title to the crops and was entitled to recover all damages to them resulting from their destruction by the defendant and that the landlord was not only not an indispensable party, but had no interest in the cause of action against the defendants, whatever might be his rights of recoupment if the lessee prevailed. (See also *Hicks* v. *Butterworth,* 30 Cal.App. 562, 567 [159 P. 224], and 14 Cal.Jur.2d 603.) We hold that Huffman was not an indispensable party and that the nonsuit cannot be sustained on that theory.

■ The judgment against Santa Fe must be affirmed. Under its franchises it was occupying land lower in elevation than the land to the north and the east thereof and was under obligation for that reason to permit passage across or under its embankments of surface water naturally flowing across country in that direction. The findings of the trial court that its embankments did so obstruct the natural flow of surface water is factually supported and must be accepted. ■ The law applicable to a lower proprietor in the position of Santa Fe is well stated in *LeBrun* v. *Richards,* 210 Cal. 308 [291 P. 825, 72 A.L.R. 336], and in the cases therein cited. Quoting from the first headnote we find the following:

"The owner of the upper or dominant estate has a legal and natural easement or servitude in the lower or servient estate to discharge all surface waters naturally falling or accumulating on his land, upon or over the land of the servient owner in the manner in which they would naturally flow from a higher to a lower level, and the owner of the lower estate is answerable in damages for any injury which may be caused to the upper estate by reason of obstructions which he has placed in the way of such natural flow, thus causing it to back up or remain on the land of the upper proprietor."

■ We now quote from Headnote 7:

"The word 'natural,' as applied to the course taken by the run-off of surface waters, has reference to that course which would be taken by such waters falling (or in the case of springs, rising) on the land of the upper proprietor, or carried thereto from still higher land, and flowing or running therefrom on to the lands of the lower proprietor undiverted and unaccelerated by any interference therewith by the upper proprietor."

■ Quoting from Headnote 8:

"In such action, notwithstanding the fact that surface waters which had formerly been carried off in a direction which took them to the right and to the left of plaintiffs' land without entering thereon were cast upon plaintiffs' property, by reason of the diversion thereof consequent upon the changed conformation of the country brought about by the making of improvements on other and higher land, it was still the duty of the defendant as the lower proprietor to receive such waters naturally flowing from plaintiffs' land on to his, provided their flow was neither accelerated, diverted nor concentrated by any act of plaintiffs."

Even though for a long period of time the presence of the Santa Fe's embankments had produced no injury due to the elevation of the grade of 25th Street, Santa Fe had no vested right in the continuance of that condition. Furthermore, it was at all times possible, if not probable, that through gradual and therefore natural changes in the conformation of the lands north and east of its embankments waters would come to top the slight elevation of 25th Street, particularly if the greater accumulation occurred because of exceptional rainfall. Santa Fe's maintenance of its embankments was a constant menace to the land being farmed by Gonella. That the presence of those embankments was an actual cause or cause in fact of the flooding that damaged Gonella was, under the evidence, a finding amply supported by the evidence. The wrong of Santa Fe's conduct combined with the wrongful conduct of the city to cause Gonella's injury and both can be held liable.

The judgment in favor of the city of Merced is reversed. The judgment against the Atchison, Topeka and Santa Fe Railway Company is affirmed.

Schottky, J., concurred.

Petitions for a rehearing were denied August 30, 1957, and the petition of defendant and appellant for a hearing by the Supreme Court was denied September 25, 1957.